UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| **TRAILS CAROLINA, LLC,**<br><br>    Third-Party Plaintiff,<br><br>vs.<br><br>**BETH BURNEY AND GUY BURNEY,**<br><br>    Third-Party Defendants. | Civil Action No: 1:25-cv-00187-MOC-SCR<br><br>**THIRD-PARTY DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS TRAILS CAROLINA, LLC'S THIRD-PARTY COMPLAINT** |

    Trails' opposition does not cure the fatal defects of its Third-Party Complaint. The Agreement upon which Trails rests is embedded in an adhesion contract that was thrust upon desperate parents looking to help their struggling child. It is unconscionably one-sided and violative of clear North Carolina public policy. Trails presents scant authority for most of its arguments, and, unsurprisingly, no direct authority for the proposition that a teen residential mental healthcare facility can abuse a child then force her parents to cover all of its liabilities.

    Trails maintains the implausible and unsupported position that the Burneys, through enrolling R.B. at Trails, were the actively negligent party and that Trails' 77 days of abuse and neglect was somehow passive. This argument flips reality on its head. Trails had exclusive custody of R.B. and does not allege, nor could it, that the Burneys in any way participated in its abuse and neglect of her.

    Trails reduces all of this down to the implication that liability stops at the front door, that parents alone are to blame for falling prey to sophisticated and misleading marketing, and that such

a practice is both widespread and consistent with North Carolina law and public policy. It is not. If Trails' position was adopted and extended across the industry, mental health and medical providers could absolve themselves of all liability for *anything* that happened after admission, as Trails seek to do here.

The Court should dismiss the Complaint with prejudice. Trails' claims remain facially implausible, and no amendment can cure the myriad defects.

I. ARGUMENT

A. Trails' Fiduciary Duty to R.B. Prohibits Its Contribution Claim

North Carolina bars a fiduciary from seeking contribution for its related liability. *See* N.C. Gen. Stat. § 1B-1(g). Trails owed R.B. a fiduciary duty under *King v. Bryant*. 369 N.C. 451 (2017). All of R.B.'s claims are related to Trails' fiduciary duty. Trails is therefore statutorily prohibited from seeking contribution from the Burneys. Trails' offers no authority to refute the fact that it owed R.B. a fiduciary duty, or that all of her claims arise out of that duty. Rather, Trails relies on three conclusory and unsupported arguments that all fail upon inspection.

First, Trails argues without citation to authority that North Carolina recognizes fiduciary duties "only in limited and clearly defined circumstances." ECF No. 22 at 12. Trails cannot cite authority for this proposition because the opposite is true. The North Carolina Supreme Court has explicitly held that "[i]t is settled by an overwhelming weight of authority that the principle extends to every possible case…in which there is confidence reposed on one side and the resulting superiority and influence on the other." *King*, 369 N.C. at 464 (quoting *Abbitt v. Gregory,* 201 N.C. 577, 598 (1931). Trails' unsupported assertion directly contradicts binding precedent.

Second, Trails argues that the fiduciary argument is not established by the pleadings, and that the determination of whether one existed is a factual issue. This argument fails because the examination of whether a fiduciary relationship exists is properly decided at the pleading stage

when, as here, the undisputed facts establish all required elements. *See Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 455, 452 (2003)(holding that "determination of whether a particular set of facts establishes the existence of a fiduciary duty may present a question of law for the court.").The undisputed facts establish each *King* element: superior knowledge, trust and confidence, and vulnerability. In addition, we have facts beyond those in *King* because Trails took custody of a minor for 77 days.

Under *King*, the analysis turns on trust and confidence being shown by the fiduciary and superiority and influence being held by the party holding the duty. *King*, 369 N.C. at 466. As to Trails' superiority, it is undisputed that it marketed itself as having expertise in adolescent behavioral health. R.B. Compl. ¶¶ 37, 82-83; ECF No. 18, pgs. 7, 12, ¶¶ 37, 82-83). This is similar to the surgeon in *King* whom the patient knew to have "special knowledge and skill in diagnosing and treating diseases and injuries…" *King*, 369 N.C. at 466, quoting *Black v. Littlejohn*¸ 312 N.C. 626, 646 (1985).

On the other hand, the Burneys showed their confidence and trust in Trails, just as the patient in *King* did, by providing Trails with R.B.'s confidential medical information during enrollment. ECF No. 18-1, pg. 1, ¶ 1-2 (Trails required R.B.'s information and subjected her to a "personal evaluation and screening process"); ECF. No. 21-3 (Burneys provided Trails with R.B.'s confidential medical information during enrollment). Ultimately, the Burneys and R.B. showed significant trust in Trails by allowing it to take custody of her on the date she arrived at Trails. ECF No. 18-1, pg. 1, ¶ 3. These are all undisputed facts that either Trails has admitted or that the attachments to its pleadings establish.

The fiduciary relationship here is even more compelling than in *King*. R.B. was only 14 years old when Trails admitted her - far more vulnerable than the adult patient in *King*. 369 N.C. at 466. Moreover, R.B.'s own psychiatrist and AAG staff referred her to Trails, further establishing

3

the trust and confidence that characterizes fiduciary relationships. ECF No. 21-1, Ex. A. And unlike the King patient who had a single consultation, Trails assumed exclusive custody of R.B. for 77 days. ECF No. 18-1, pg. 1, ¶ 3. This extended custody over a minor child in a therapeutic setting represents the epitome of the "confidence reposed on one side and the resulting superiority and influence on the other" that defines fiduciary duties. *Abbitt*, 201 N.C. at 598.

Finally, Trails argues the statutory exception doesn't apply because (1) its contribution claim isn't for breach of fiduciary duty, and (2) the exception wouldn't cover R.B.'s negligence claims anyway. Both arguments misunderstand the statute, again, without citing any authority.

First, Trails mischaracterizes the fiduciary exception to contribution. Contribution is only available when two parties "become jointly liable in tort <u>for the same injury to the same person</u>…" N.C. Gen. Stat. § 1B-1(a) (emphasis added). The injuries are all R.B.'s. Her injuries are the basis of Trails' liability, and Trails' contribution claim seeks to have the Burneys pay for that liability. The relevant liability is R.B.'s claims against Trails, not Trails' contribution theory.

Second, Trails artificially separates negligence from fiduciary duties, but North Carolina recognizes fiduciary claims as "a species of negligence." *In re Foreclosure by Goddard & Peterson, PLLC*, 248 N.C. 190, 196 (2016) Whether labeled as negligence, trafficking, or fraud, all of R.B.'s claims arise because Trails "failed to act in good faith and with due regard" to her interests. *Id.* The statutory bar encompasses all claims arising from a fiduciary duty, not just those explicitly labeled as such.

Trails bears the burden of establishing its contribution claim. It offers zero authority for its argument that a residential therapeutic facility can seek contribution related to its fiduciary duties to a minor. This silence is dispositive. The undisputed facts establish the duty, all claims relate to the duty, and § 1B-1(g) bars contribution. This claim fails as a matter of law.

### B. The Agreement is Unconscionable And it Violates Clear North Carolina Public Policy

Trails ignores that the Court's unconscionability analysis "is more of a sliding scale than a true dichotomy." *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 103 (2008). The substantive unconscionability here is shocking and unprecedented: forcing parents to pay a facility for therapeutic services for their child then to pay that same facility's expenses after it abused her. Trails' only response is an unsupported "everyone else does it" defense. Without authority for this horrifying bandwagon theory, the Agreement remains unconscionable and unenforceable.

Trails correctly cites the well-cited standard from *Brenner* – whether reasonable and honest persons would make or accept the terms. ECF No. 22 at 5, quoting, *Brenner v. Little Red Sch. House, Ltd.*, 302 N.C. 207, 213 (1981). But *Brenner* involved non-refundable tuition, not forcing parents to finance their daughter's abuse claims. *See* 302 N.C. 207. The question is whether reasonable parents would agree to pay for the defense of their daughter's abuser, and whether an honest therapeutic provider interested in helping families heal would demand such terms. The answer to both is obvious.

Trails cannot cite a single case upholding an indemnification clause in a parent-child-provider context, let alone one involving alleged abuse of a minor. Its reliance on decades-old commercial cases involving sophisticated business entities is telling. The absence of any analogous authority supporting Trails' position strongly suggests that no court has ever endorsed such an unconscionable arrangement.

Trails claims such agreements "are standard across residential and therapeutic programs…" ECF No. 22 at 5. Even accepting this, again unsupported assertion, Defendant Ashville Academy for Girls, which also enrolled R.B., has not sued the Burneys for indemnification.

Trails blithely states the Agreement does not bar claims or restrict abuse reporting. That is

5

exactly what it does. North Carolina is a universal reporting state. *See* N.C. Gen. Stat. § 7B-301. The one-sided and unlimited scope of the Agreement is expressly "without limitation" covering all claims "arising out of or in connection with" R.B.'s time at Trails. ECF No. 18-1 at ¶7. Reporting triggers investigations, media attention, and lawsuits – all of which purportedly trigger indemnification obligations once claims are filed. Trails could have carved out claims related to reporting abuse to the State or liability based on intentional acts, but it chose instead to use broad language to capture any conceivable claim and all related expenses and liability. *Id.*

The Agreement does not "merely allow Trails to seek reimbursement;" it weaponizes family bonds to functionally bar all survivors from seeking justice or reporting their abuse. Trails cannot explain away this Hobson's choice by gliding by the reality of the precedent it seeks to establish. Survivors undoubtedly face financially ruining their parents for reporting their abuse to the State and/or for filing a claim.

Trails' sparse authority is telling in what it lacks. Trails relies solely on cases that are all at least 40 years old, all of which involve sophisticated entities like contractors and insurance companies, and none of which involve minors or residential therapeutic providers. Even their own cases undermine their positions, confirming that exculpatory clauses "are not favored and are to be strictly construed." *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 467 (1965).

Trails is shifting its liability for negligence and child abuse to parents. North Carolina regularly prohibits exculpatory clauses wherever there is a "public interest in the transaction at issue." *McMurray v. United States*, 551 Fed. Appx. 651, 655 (4th Cir. 2014). Delivering residential therapeutic services to minors absolutely involves questions of "public health or safety." *See Blaylock Grading Co. v. Smith*, 189 N.C. App. 508, 658 (2008) (upholding contractual limitation on liability because it did "not implicate the public health or safety.") To be sure, "[h]eavy regulation of an activity or entity may well reflect the presence of an important public interest…"

*McMurray*, 551 Fed. Appx. at 655. North Carolina heavily regulated Trails, such that it revoked Trails' license. ECF No. 1 at ¶ 104; ECF No. 18 at pg. 15, ¶ 104.

Accepting Trails' argument would permit every healthcare provider to escape liability through boilerplate indemnification forced on desperate patients and parents. This Court should not be the first to bless such a radical departure from North Carolina's protection of vulnerable patients.

### C. Trails' Liability is Neither Derivative nor Passive

Trails essentially argues that enrollment decisions, not 77 days of exclusive custody, caused R.B.'s injuries. By this logic, when another student died in Trails' custody, the parents' enrollment decision, not Trails' restraint techniques, caused the death. This strains plausibility beyond recognition. Trails ultimately does not plead a plausible basis for the Burneys' purported negligence.

The Burneys are immune from all negligence claims related to R.B. *See Lee v. Mowett Sales Co.*, 316 N.C. 489, 492 (1986) ("[S]ince a parent is not liable in a direct action for the plaintiff child's injury, the parent cannot be held liability for any contribution for damages awarded against another as result of such injury."). The Burneys cannot be held liable for parental decisions, i.e., any negligence that may arise from their enrollment decision with Trails. They cannot therefore be joint tortfeasors because they cannot be held liable to R.B. for a tort that occurred while she was a minor. *Lee*, 316 N.C. at 492.

Trails invokes Rule 8(d)'s alternative pleading doctrine to defend simultaneously denying negligence while seeking contribution. ECF No. 22 at 11. But alternative pleading does not exempt a party from pleading a plausible claim. Even accepting Trails' denials as proper under Rule 8, it still bears the burden of plausibly alleging that the Burneys could be liable to R.B. As shown in *Lee*, they cannot. Alternative pleading allows inconsistent theories, but it does not create liability

7

where none exists as a matter of law. Federal Rule 8 cannot override North Carolina's substantive immunity doctrine. *Lee*, 316 N.C. at 492.

Beyond this fatal threshold limitation, Trails puts forward a nonsensical reduction of its actions in this case. Trails claims, "its involvement was limited to accepting R.B. into the program…" ECF No. 22 at 9. Trails' own Enrollment Agreement, attached to its Complaint, refutes this fiction. Trails took custody of R.B. at admission (ECF No. 18-1, ¶ 3); charged the Burneys $425 daily (*Id.* at ¶ 4); arranged medical care (*Id.* at ¶ 10); conducted "tests and assessments" of R.B. for research (*Id.* at ¶ 13); ran family seminars and required the Burneys to attend (*Id.* at ¶ 15); and engaged R.B. in "ranch, agricultural and vocational activities." (*Id.* at ¶ 7). This isn't passive acceptance at enrollment – it is activity Trails conducted while it had exclusive custody of R.B.

In its three-part section on common law indemnity, Trails cited just a single case for the general holding that indemnity may be proper when there is derivative liability. ECF No. 22 at 8-9, citing *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 442 (1977). Trails cites no authority for any of its arguments related to whether common law indemnity applies to the facts of this case.

Trails' allegation that "involvement ended at enrollment" is facially implausible. For 77 days, Trails had exclusive custody of a minor. It housed her, fed her (or didn't), supervised her, restrained her, and directed her labor. Even inaction during custody of a minor is action—neglect is itself tortious conduct. No plausible reading of facts makes Trails' 77-day custody passive.

Trails' liability is not derivative of the Burneys. Derivative liability arises when "one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former." *Edwards v. Hamill*, 262 N.C. 528, 531 (1964) (citing several cases). North Carolina recognizes derivative liability in specific contexts, such as employers for employees' acts (*see, e.g. White v. Consol. Planning, Inc.*, 166 N.C. App. 283 (2004)), or vehicle owners for drivers'

8

negligence (*see, e.g. Chappell v. Webb.*, 395 N.C. App. 13 (2024)). Trails cites no case, and cannot, where a facility's direct care of a minor was deemed "derivative" of enrollment decisions.

Ultimately, Trails bears the burden of showing its indemnification theory is legally cognizable. Its near-total absence of authority is fatal. The single case it cites, *Chantos*, merely states the general principle of derivative liability. It does not support Trails' novel theory that direct care of a minor in its custody is somehow derivative of enrollment. This is unsurprising, as no legal theory transforms 77 days of exclusive custody and direct care into derivative liability based on an enrollment decision. Trails' hollow Opposition confirms no such theory exists.

### IV. CONCLUSION

In conclusion, Trails' Opposition to the Burneys' Motion to Dismiss fails to establish the plausibility of any of Trails' claims. Most of Trails' arguments are unsupported and rely on arguments of counsel and contortions of the facts and relationships of the parties. The one-sided Agreement violates long-settled North Carolina public policy by attempting to make parents pay the legal bills of their child's abuser. Trails' Third-Party Complaint is nothing more than a public deterrent to future claimants and their families with one clear message: vindicate your rights and we'll bankrupt your family.

Trails sanitizes this reality by characterizing its actions as merely upholding an agreement and offering, without proof, that such agreements (and presumably such outcomes) are widespread in the industry. The result and implication of that argument is horrifying. Corporate funded facilities like Trails would be free to abuse and neglect children with impunity. All of their liabilities and costs would be paid by the unsuspecting parents that fell prey to their pervasive and sophisticated marketing.

The question before the Court is simple: Can a purportedly residential therapeutic facility abuse and neglect a child then force her parents to pay its defense and cover all related liabilities?

9

Trails offers no authority for the precedent it seeks because none exists. North Carolina law is clear that Trails' position is unconscionable and against public policy.

If upheld, Trails' theory would fundamentally undermine North Carolina's comprehensive child protection framework by deterring abuse reporting and rendering therapeutic facilities effectively judgment-proof through contractual sleight of hand. Survivors across the state would face the impossible choice between seeking justice and financially destroying their families. No reasonable parent would knowingly agree to such terms, and no honest therapeutic provider genuinely interested in family healing would demand them. *Tillman*, 362 N.C. at 103.

Wherefore, the Court should dismiss all of Trails' claims with prejudice.

Dated: October 29, 2025               **RESPECTFULLY SUBMITTED,**

*/s/ Ruth A. Sheehan*
RHINE LAW FIRM, P.C.

Ruth A. Sheehan, NCSB 48069
Email: ras@rhinelawfirm.com
Joel R. Rhine, NCSB 16028
Email: jrr@rhinelawfirm.com
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

Kimberly A. Dougherty, Esq.
(admitted *pro hac vice)*
Keith E. Smith, Esq.
(admitted *pro hac vice*)
JUSTICE LAW COLLABORATIVE
210 Washington St.
North Easton, MA 0256
Tel: (508) 230-2700
Fax: (385) 278-0287
Email: kim@Justicelc.com
Email: keith@justicelc.com

**USE OF ARTIFICIAL INTELLIGENCE CERTIFICATION**

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources of Westlaw and Lexis. Every statement and citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at my discretion as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

**This the 29th day of October, 2025.**

*/s/ Keith E. Smith*
Keith E. Smith, Esq.
(admitted *pro hac vice*)
Kimberly A. Dougherty, Esq.
(admitted *pro hac vice)*
JUSTICE LAW COLLABORATIVE
210 Washington St.
North Easton, MA 0256
Tel: (508) 230-2700
Fax: (385) 278-0287
Email: Kim@Justicelc.com
Email: keith@justicelc.com